Justice KENNEDY, dissenting.
The dissenting opinion by Justice SCALIA gives a full and complete explanation of the reasons why the Court's opinion contradicts settled First Amendment principles. This separate dissent is written to underscore the irony in the Court's having concluded that the very First Amendment protections judges must enforce should be lessened when a judicial candidate's own speech is at issue. It is written to underscore, too, the irony in the Court's having weakened the rigors of the First Amendment in a case concerning elections, a paradigmatic forum for speech and a process intended to protect freedom in so many other manifestations.
First Amendment protections are both personal and structural. Free speech begins with the right of each person to think and then to express his or her own ideas. Protecting this personal sphere of intellect and conscience, in turn, creates structural safeguards for many of the processes that define a free society. The individual speech here is political speech. The process is a fair election. These realms ought to be the last place, not the first, for the *1683 Court to allow unprecedented content-based restrictions on speech. See Monitor Patriot Co. v. Roy,401 U.S. 265, 272, 91 S.Ct. 621, 28 L.Ed.2d 35 (1971)(the First Amendment has its "fullest and most urgent application precisely to the conduct of campaigns for political office"). As James Madison observed: "A popular Government, without popular information, or the means of acquiring it, is but a Prologue to a Farce or a Tragedy; or, perhaps both. [A] people who mean to be their own Governors, must arm themselves with the power which knowledge gives." Letter to William T. Berry (Aug. 4, 1822), in J. Madison, Writings 790 (J. Rakove ed. 1999). The Court's decision in this case imperils the content neutrality essential both for individual speech and the election process.
With all due respect for the Court, it seems fair and necessary to say its decision rests on two premises, neither one correct. One premise is that in certain elections-here an election to choose the best qualified judge-the public lacks the necessary judgment to make an informed choice. Instead, the State must protect voters by altering the usual dynamics of free speech. The other premise is that since judges should be accorded special respect and dignity, their election can be subject to certain content-based rules that would be unacceptable in other elections. In my respectful view neither premise can justify the speech restriction at issue here. Although States have a compelling interest in seeking to ensure the appearance and the reality of an impartial judiciary, it does not follow that the State may alter basic First Amendment principles in pursuing that goal. See Republican Party of Minn. v. White,536 U.S. 765, 788, 122 S.Ct. 2528, 153 L.Ed.2d 694 (2002).
While any number of troubling consequences will follow from the Court's ruling, a simple example can suffice to illustrate the dead weight its decision now ties to public debate. Assume a judge retires, and two honest lawyers, Doe and Roe, seek the vacant position. Doe is a respected, prominent lawyer who has been active in the community and is well known to business and civic leaders. Roe, a lawyer of extraordinary ability and high ethical standards, keeps a low profile. As soon as Doe announces his or her candidacy, a campaign committee organizes of its own accord and begins raising funds. But few know or hear about Roe's potential candidacy, and no one with resources or connections is available to assist in raising the funds necessary for even a modest plan to speak to the electorate. Today the Court says the State can censor Roe's speech, imposing a gag on his or her request for funds, no matter how close Roe is to the potential benefactor or donor. The result is that Roe's personal freedom, the right of speech, is cut off by the State.
The First Amendment consequences of the Court's ruling do not end with its denial of the individual's right to speak. For the very purpose of the candidate's fundraising was to facilitate a larger speech process: an election campaign. By cutting off one candidate's personal freedom to speak, the broader campaign debate that might have followed-a debate that might have been informed by new ideas and insights from both candidates-now is silenced.
Elections are a paradigmatic forum for speech. Though present day campaign rhetoric all too often might thwart or obscure deliberative discourse, the idea of elections is that voters can engage in, or at least consider, a principled debate. That debate can be a means to find consensus for a civic course that is prudent and wise. This pertains both to issues and to the choice of elected officials. The First *1684 Amendment seeks to make the idea of discussion, open debate, and consensus-building a reality. But the Court decides otherwise. The Court locks the First Amendment out.
Whether an election is the best way to choose a judge is itself the subject of fair debate. But once the people of a State choose to have elections, the First Amendment protects the candidate's right to speak and the public's ensuing right to open and robust debate. See ibid.One advantage of judicial elections is the opportunity offered for the public to become more knowledgeable about their courts and their law. This might stimulate discourse over the requisite and highest ethical standards for the judiciary, including whether the people should elect a judge who personally solicits campaign funds. Yet now that teaching process is hindered by state censorship. By allowing the State's speech restriction, the Court undermines the educational process that free speech in elections should facilitate.
It is not within our Nation's First Amendment tradition to abridge speech simply because the government believes a question is too difficult or too profound for voters. If the State is concerned about unethical campaign practices, it need not revert to the assumption that voters themselves are insensitive to ethics. Judicial elections were created to enable citizens to decide for themselves which judges are best qualified and which are most likely to "stand by the constitution of the State against the encroachment of power." Report of the Debates and Proceedings of the Convention for the Revision of the Constitution of the State of New York 672 (1846). The Court should not now presume citizens are unequipped for that task when it comes to judging for themselves who should judge them.
If there is concern about principled, decent, and thoughtful discourse in election campaigns, the First Amendment provides the answer. That answer is more speech. See, e.g., Whitney v. California,274 U.S. 357, 377, 47 S.Ct. 641, 71 L.Ed. 1095 (1927)(Brandeis, J., concurring) (when the government objects to speech, "the remedy to be applied is more speech, not enforced silence"). For example, candidates might themselves agree to appoint members of a panel charged with periodic evaluation of campaign statements, candor, and fairness. Those evaluations could be made public. And any number of private organizations or voter groups seeking to evaluate campaign rhetoric could do the same. See White, supra,at 795, 122 S.Ct. 2528(KENNEDY, J. concurring).
Modern communication technologies afford voters and candidates an unparalleled opportunity to engage in the campaign and election process. These technologies may encourage a discourse that is principled and informed. The Internet, in particular, has increased in a dramatic way the rapidity and pervasiveness with which ideas may spread. Whether as a result of disclosure laws or a candidate's voluntary decision to make the campaign transparent, the Internet can reveal almost at once how a candidate sought funds; who the donors were; and what amounts they gave. Indeed, disclosure requirements offer a powerful, speech-enhancing method of deterring corruption-one that does not impose limits on how and when people can speak. See Doe v. Reed,561 U.S. 186, 199, 130 S.Ct. 2811, 177 L.Ed.2d 493 (2010)("Public disclosure also promotes transparency and accountability in the electoral process to an extent other measures cannot"). Based on disclosures the voters can decide, among other matters, whether the public is well served by an elected judiciary; how each candidate defines appropriate campaign conduct (which may speak volumes *1685 about his or her judicial demeanor); and what persons and groups support or oppose a particular candidate. See Buckley v. Valeo,424 U.S. 1, 67, 96 S.Ct. 612, 46 L.Ed.2d 659 (1976)(per curiam). With detailed information about a candidate's practices in soliciting funds, voters may be better informed in choosing those judges who are prepared to do justice "without fear or favor." 10 Encyclopaedia of the Laws of England 105 (2d ed. 1908). The speech the Court now holds foreclosed might itself have been instructive in this regard, and it could have been open to the electorate's scrutiny. Judicial elections, no less than other elections, presuppose faith in democracy. Judicial elections are no exception to the premise that elections can teach.
In addition to narrowing the First Amendment's reach, there is another flaw in the Court's analysis. That is its error in the application of strict scrutiny. The Court's evisceration of that judicial standard now risks long-term harm to what was once the Court's own preferred First Amendment test. As Justice SCALIA well explains, the state law at issue fails strict scrutiny for any number of reasons. The candidate who is not wealthy or well connected cannot ask even a close friend or relative for a bit of financial help, despite the lack of any increased risk of partiality and despite the fact that disclosure laws might be enacted to make the solicitation and support public. This law comes nowhere close to being narrowly tailored. And by saying that it survives that vital First Amendment requirement, the Court now writes what is literally a casebook guide to eviscerating strict scrutiny any time the Court encounters speech it dislikes. On these premises, and for the reasons explained in more detail by Justice SCALIA, it is necessary for me to file this respectful dissent.